UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | | |
|---|---|---|
| DONNA JEAN SEXTON #246358 | ) | |
| | ) | |
| v. | ) | Nos. 2:05-cv-128; 2:06-cv-54 |
| | ) | |
| HOWARD CARLTON, Warden | ) | |

**MEMORANDUM OPINION**

These *pro se* habeas corpus petitions, brought under 28 U.S.C. § 2254 by a state prisoner, were consolidated and are now before the Court upon the respondent's unopposed motion for summary judgment. [Doc. 9].[1] In support of the motion, the respondent has also submitted copies of the state court record. [Doc. 11, Addenda 1-10]. For the reasons below, the motion will be **GRANTED** and the petitions **DISMISSED**.

**I. Procedural Background**

On March 20, 1995, pursuant to the petitioner's pleas of *nolo contendere*, she was convicted of felony first-degree murder and aggravated robbery in the Criminal Court for Carter County, Tennessee. The petitioner and her boyfriend

---

[1] Because the order of consolidation designated this as the lead case, all references to the record are to Civil Action No. 2:05-cv-128.

robbed a convenience market and her boyfriend stabbed the store clerk to death. The petitioner received a sentence of life with the possibility of parole for the murder and a concurrent eight years for the aggravated robbery. She did not seek direct review.

Instead, she filed a *pro se* petition for post-conviction relief and several amended petitions. Counsel was obtained, but he filed no amendments to his client's *pro se* submissions. The trial court summarily dismissed the petition, but the judgment was reversed on appeal and the case was remanded. *Sexton v. State*, 2000 WL 1100328 (Tenn. Crim. App. July 31, 2000).

A different attorney was retained. He submitted a final amended post-conviction petition, alleging as grounds for relief that the petitioner's pleas were invalid and that she had had ineffective assistance of counsel. Following an evidentiary hearing, the petition once again was dismissed. This time the Tennessee Court of Criminal Appeals affirmed the judgment, and the Tennessee Supreme Court declined further review. *Sexton v. State*, 151 S.W.3d 525 (Tenn. Crim. App.), *perm. app. denied* (Tenn. 2004). The petitioner now brings this instant petition, seeking a

writ of habeas corpus, alleging that her *nolo contendere* plea to felony murder was unconstitutionally obtained and her attorneys were ineffective.[2]

## II. Standards of Review

A district court may not grant a writ of habeas corpus for any claim adjudicated on its merits in state court unless the adjudication resulted in a decision that either (1) was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). A state court's factual findings will be presumed correct, unless a petitioner shows, by clear and convincing evidence, that those findings are erroneous. 28 U.S.C. § 2254(e)(1).

Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court **FINDS** that this case is susceptible to a summary disposition.

---

[2] The petitioner is attacking only the murder conviction, not the one for aggravated robbery.

### III. Discussion

A. *Involuntary Guilty (Nolo Contendere) Pleas.*[3]

The seminal case on the validity of guilty pleas is *Boykin v. Alabama*, 395 U.S. 238 (1969). *Boykin* instructs that, before accepting a guilty plea, a court must determine whether a defendant understands that she is waiving her right to a trial by jury; her right to confront the witnesses against her; and her privilege against self-incrimination. *Id.* at 243-44. Whether a plea is voluntarily and intelligently entered depends upon the particular facts and circumstances of each case. *Brady v. United States*, 397 U.S. 742, 749 (1979).

A defendant must be sufficiently aware of the relevant circumstances, as well as the probable and direct consequences of his plea. *Id.* at 748. The constitutional standards which determine whether a plea of *nolo condendere* is valid are the same ones which apply to a guilty plea. The validity of either type of plea depends upon whether it is entered voluntarily, knowingly and intelligently. *North*

---

[3] A *nolo contendere* plea is not viewed as an express admission of guilt, but as a consent by a defendant that he may be punished as though he were guilty. *North Carolina v. Alford*, 400 U.S. 25, 36 n.8 (1970).

4

*Carolina v. Alford*, 400 U.S. 25 (1970). A waiver of the *Boykin* rights cannot be presumed from a silent record. *Boykin*, 395 U.S. at 243.

In support of her claim that her pleas were constitutionally defective, the petitioner makes two arguments.

1. *Because the petitioner was not informed that she was waiving her constitutional rights, her pleas of nolo contendere were not entered intelligently, knowingly and voluntarily.*

When this claim was presented in the petitioner's post-conviction appeal, the state appellate court, citing to *Boykin*, made certain findings. It determined that the plea transcript showed that the trial court had not advised the petitioner specifically that, by entering her pleas, she was waiving her constitutional rights. It further determined that the transcript reflected that the trial judge had explained to the petitioner that her *nolo contendere* plea would result in her being found guilty and would allow the prosecutor to ask her questions, which she would be required to answer. She had responded that she understood. The petitioner also had acknowledged that she had read, or had had explained to her, a petition for acceptance of a plea of *nolo contendere* and waiver of rights; that she understood it; and that she had no questions regarding the document.

The state appellate court went on to find that, despite the trial court's failure to expressly ascertain whether the petitioner understood that she was waiving

5

her rights, the record showed that the petitioner had knowingly relinquished them. Pointing to the nature of the proceeding;[4] the colloquy between the trial court and the petitioner; and the relatively beneficial plea agreement,[5] the state appellate court concluded that she had both known and understood that the constitutional rights associated with the trial process were not to be asserted by her any further. It then rejected her claim.

The petitioner will be granted relief only if the state court's adjudication of the claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

In this case, the state appellate court's conclusion was none of these things. The transcript shows that the trial judge gave a painstaking and detailed recitation of the rights enumerated in *Boykin*. Though it also shows that the trial judge

---

[4] Entry of a *nolo contendere* plea avoids a trial at which the enumerated *Boykin* rights would be available to be asserted.

[5] At the time of the crime, the punishment for first-degree murder was death or life imprisonment. Tenn. Code Ann. § 39-13-202(b)( now § 39-13-202 (c). Though the State had sought the most severe penalty for the offense, the petitioner received the most lenient sentence by pleading *nolo contendere*. Also, the trial judge sentenced her to a concurrent sentence for the aggravated robbery, rather than a consecutive sentence.

failed to advise the petitioner that she was waiving those rights by entering pleas of *nolo contendere*, it likewise shows that the petitioner indicated, during the plea colloquy, that she had signed an acceptance of a plea and waiver of rights form; that she had either read it herself or someone else had read or explained it to her; and that she understood it and had no questions about it.

While the petitioner correctly points out that the Tennessee criminal procedural rule for accepting guilty pleas (like its federal counterpart) specifically requires a judge to ask a defendant whether she waives her rights before accepting a plea of guilty or *nolo contendere*, *see* Tenn. R. Crim. P. 11, she cites to no Supreme Court case which holds that an express articulation of the waiver on the record is constitutionally required. *See Armstrong v. Egeler*, 563 F.2d 796, 799, n.2 (6th Cir. 1977) (noting that although the Supreme Court has "established precise minimal standards for determining the constitutionality of confessions, it has made no such effort in the field of guilty pleas"). *See also Stinson v. Turner*, 473 F.2d 913, 916 (10th Cir. 1973) (*Boykin* does not require an express waiver on the record); *Wade v. Coiner*, 468 F.2d 1059, 1061 (4th Cir. 1972) (rejecting the proposition that the waiver of *Boykin* rights is a consequence of which a defendant must be personally informed before a guilty plea may be accepted). Indeed, with respect to the federal procedural rule, the Sixth Circuit has held to the contrary. *See Scranton v. Whealon*, 514 F.2d 99,

101 (6th Cir. 1975) (The *Boykin* rule does not require the specific judicial colloquy mandated by Rule 11 or the Federal Rules of Criminal Procedure.). As noted previously, the validity of a guilty plea depends upon the facts and circumstances of the individual case, *Brady*, 397 U.S. at 749, and not on any formulaic recitation. *Armstrong,* 563 F.2d at 799 ("[W]e nevertheless are unwilling to hold, as a constitutional requirement applicable in habeas corpus cases to state prosecutions, that a guilty plea requires any precise litany for its accomplishment.")

Though the better practice (and the only one acceptable in federal courts under Rule 11) is to inform a defendant explicitly that she is waiving her enumerated *Boykin* rights by pleading *nolo contendere*, the state court reasonably concluded that the totality of circumstances as reflected in the record shows that not only was the petitioner aware of her rights, but that she intentionally surrendered those rights and entered constitutionally valid *nolo contendere* pleas. The state court's rejection of the petitioner's claim was not an unreasonable application of *Boykin* to the facts of this case and did not result from an unreasonable determination of the facts.

2. *The record does not show a sufficient factual basis for the petitioner's plea of nolo contendere.*

The petitioner alleges that, at the plea hearing, the prosecuting attorney gave a statement of the evidence, but that the statement he offered does not suffice to

support her plea of *nolo contendere*. More specifically, the petitioner argues that the statement contains no facts to demonstrate that she was guilty of felony murder.

Requiring that a plea be supported by a factual basis serves to ensure that pleas are made with an understanding that the conduct admitted constitutes the offense charged, *McCarthy v. United States*, 394 U.S. 459, 465 (1969).

The prosecutor, at the plea hearing, recounted the proof that the State could present to show that the petitioner had committed the alleged offenses.

> We have a stipulation that Miss Sexton was criminally responsible as the law defines criminal responsibility for the murder of - - Mrs. Montgomery there at the market, the murder with which she's charged. She did not, however, it's not the state's theory, it would not be our proof that she was the person who committed the murder; but, that - - but - - and that she was more than a mere person who was present. But, that she was what used to be called an aider and abetter to that murder. She was criminally responsible which is the terminology that's now used in the code. But, again, she feels that it's important, and - - we agree that she was not the person who stabbed Mrs. Montgomery, that - - that caused the fatal wound upon Mrs. Montgomery. We believe that that was done by her companion in this crime Matney Putman.

[Doc. 11, Addendum No. 3, Plea Hrg. T. at 12-13].

The petitioner's counsel was then asked if the defense agreed that the above stated proof could result in a jury finding the petitioner guilty of the offenses charged. [*Id.*, at 13]. Counsel responded affirmatively. [*Ibid.*].

During the petitioner's post-conviction appeal, one of her supporting arguments for the necessity of a factual basis was predicated on Tennessee's criminal procedural rules and case law. This aspect of the claim is not cognizable in these proceedings because a federal habeas court does not sit to review matters purely of state law. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

As to the arguments involving a constitutional violation, the state court pointed out that an insufficient factual basis does not, per se, rise to the level of constitutional violation in relation to the knowingness or voluntariness of a plea. According to the state court, the prosecutor recited in his statement that the petitioner aided and abetted in the store clerk's murder and that, though she was not the person who stabbed the victim, she was more than a mere person who was present. The state court concluded that the record sufficiently showed a factual basis relative to the murder charge and that the petitioner understood that she was pleading *nolo contendere* to felony murder. Nothing offered by the petitioner undercuts the state court's ruling.

Moreover, "there is no requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black*, 516 F.2d 1380 (6th Cir. 1975). *See also Willbright v. Smith*, 745 F.2d 779, 780 (2nd Cir. 1984) ("A factual basis inquiry ... is merely one way of satisfying the constitutional requirement that a plea be voluntary

and intelligent; ... due process does not mandate a factual basis inquiry by state courts."). So long as a plea is made knowingly and voluntarily, "a state court's failure to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas corpus relief under 28 U.S.C. § 2254." *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3rd Cir. 1996). *See also United States v. Tunning*, 69 Fed. 3rd 107, 111 (6th Cir. 1996) (Due process does not require a factual basis for a guilty plea to be truly voluntary.).

The Court concludes that the state court's decision was not contrary to or an unreasonable application of any controlling rule in a Supreme Court case nor based on an unreasonable determination of the facts. This claim does not warrant habeas corpus relief.

B. **Ineffective Assistance of Counsel**.

A plea may still be constitutionally impermissible if it results from the ineffective assistance of counsel. A criminal accused has a right to effective assistance of counsel during plea negotiations. *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). The seminal case for evaluating an ineffectiveness claim is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for judging ineffectiveness claims. A petitioner must show, first, that counsel's performance was deficient and, second, that the deficient

performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.*, at 693.

To demonstrate deficient performance, the petitioner must show that her counsel's representation fell below an objective standard of reasonableness on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.*, at 688, 693-94. A reviewing court's scrutiny of counsel's performance is highly deferential and it must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonably professional assistance." *Id*. at 689. An attorney who gives erroneous advice concerning parole eligibility may have rendered a deficient performance. *McAdoo v. Elo*, 365 F.3d 487, 499 (6th Cir. 2005); *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988).

To show prejudice, in a guilty plea context, a petitioner must demonstrate that there is a reasonable probability that, but for her attorney's unprofessional errors, she would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Id.* at 59. A petitioner who shows that she pled guilty in reliance on her lawyer's incorrect advice as to when she would be eligible for parole would have a compelling claim of prejudice. *Long*

*v. United States*, 1990 WL 155292, *3 (6th Cir. Oct. 6, 1990) (citing to *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990)).

In her sole claim of ineffective assistance, the petitioner alleges that her attorney incorrectly advised her as to her eligibility for parole and the length of a life sentence. More specifically, she maintains that, when she was sentenced, a life term of imprisonment was served in sixty years, but that her lawyer misinformed her that, if she pled *nolo contendere* to the charges, "she could do no more than thirty years on a life sentence" and that anything less than thirty years would be at the discretion of the parole board and other state authorities. [Pet'r's Br. at 9]. She testified accordingly at the post-conviction hearing and also stated that, had she known that a life sentence was sixty years in prison, she would not have pled *nolo contendere*, but would have gone to trial.

In resolving this claim, the post-conviction court recognized at the outset that the petitioner had received conflicting parole eligibility information and that her original release eligibility date would have occurred after she had served 36 years,[6] not the 30 years stated by her attorney. Nevertheless, the court did not accredit her testimony that she would have stood trial had she known her life sentence was

---

[6] Under the law in effect at the time of the petitioner's sentence, she would have been eligible for parole after serving sixty percent of her life sentence. A life sentence was served in 60 years, and 60% of 60 years is 36 years.

effectively 60 years, finding that one reason for her *nolo contendere* plea was to stave off a possible death sentence. Ultimately concluding that the petitioner had not shown deficient performance or resulting prejudice, the post-conviction court ruled against her.

When the petitioner raised her claim in the Tennessee Court of Criminal Appeals, that court pointed out that the plea hearing transcript reflected that all individuals involved in the plea process—not just the petitioner—were considering actual confinement time. The state appellate court then determined that the defense attorneys' advice had been "conflicting and somewhat incorrect." However, the reviewing state court, citing to *Strickland*, *Hill* and *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1995),[7] likewise found that the petitioner had not shown prejudice resulting from the incorrect advice. This finding was based on the trial court's computation that the petitioner's actual confinement, with the sentence reduction credits typically awarded a prisoner for good conduct, would be twenty-five years and because twenty-five years was within the thirty-year range that the petitioner's attorneys had

---

[7] In *Baxter*, the Tennessee Supreme Court held that a defendant who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test.

projected. The Court of Criminal Appeals determined that, absent any prejudice stemming from the alleged attorney error, post-conviction relief was not justified with respect to this claim.

This decision may only be disturbed if the state court's resolution of the claim was contrary to, or an unreasonable application of, the governing Supreme Court precedent or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Certainly, the state court's decision is not contrary to the controlling rule in a Supreme Court case because it examined this claim under *Strickland* and *Hill*. Also, the petitioner has not offered clear and convincing evidence to contradict the post-conviction court's presumptively correct finding that the petitioner would be eligible for release in twenty-five years. Thus, the question is whether it was an unreasonable application of those Supreme Court precedents for the state appellate court to decide that any deficiency of performance did not result in prejudice.

It was not. The petitioner has not challenged the factual finding that she would be parole-eligible in twenty-five years. Nor has she suggested any defense to the murder charge that could have been advanced, must less one which likely would have been successful. Absent such a showing, her attorneys' incorrect advice furnishes no basis for relief. *Hill*, 474 U.S. at 59. The Court has viewed the record

facts (including the post-conviction court's credibility findings with respect to the petitioner's testimony) and the applicable law through AEDPA's deferential lens and is satisfied that the state courts disposed of the petitioner's claim in a manner that was not an unreasonable application of the *Strickland-Hill* test, nor an unreasonable determination in light of the facts placed before it. Therefore, the petitioner is not entitled to habeas corpus relief on this claim either.

## IV. Conclusion

The Court finds that there is no genuine issue of material fact and that the respondent is entitled to judgment as a matter of law. Accordingly, the respondent's motion for summary judgment will be granted and these petitions will be dismissed.

A separate judgment will enter.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE